UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| INTERMED, INC., | : | CIVIL ACTION NO. |
|    Plaintiff | : | 3:09-CV-00762 (JCH) |
| | : | |
| v. | : | |
| | : | |
| ALPHAMEDICA, INC. and | : | DECEMBER 18, 2009 |
| RXPERIENCE, LLC, | : | |
|    Defendants. | : | |

**RULING RE: DEFENDANT INTERMED'S MOTION TO DISMISS (Doc. No. 27)**

**I.   INTRODUCTION**

Intermed, Inc. ("Intermed") brings this action against defendants Alphamedica, Inc. and Rxperience, LLC, alleging that it suffered damages as a result of the defendants' failure to honor a confidentiality agreement and contract that provided for Intermed to be the exclusive publisher of defendants' healthcare educational programs incorporating latent image printing technology.  See Second Amended Complaint[1] ("2d Amd. Cmplt") (Doc. No. 26).  Defendants moved this court to dismiss the Second Amended Complaint, alleging that Intermed's claims either are barred by the applicable statute of limitations, fail to state a claim upon which relief can be granted, or are

---

[1] Intermed originally filed its Complaint against defendants on May 11, 2009.  See Complaint (Doc. No. 1).  On June 1, 2009, Intermed filed an Amended Complaint against defendants, attaching certain documents that it referenced as exhibits that it had failed to attach in its original Complaint.  See Amended Complaint (Doc. No. 11).  On July 6, 2009, at the defendants' request, the court held a pre-filing conference in which defendants requested leave to file a motion to dismiss Intermed's Amended Complaint for failure to state a cause of action under Federal Rule of Civil Procedure 12(b)(6) on the grounds that (1) Intermed's claims were barred by the statute of limitations; (2) Intermed failed to allege any facts in support of its claims for breach of contract; and (3) Intermed failed to allege any facts to support its claims against Rxperience.  The court granted Intermed leave to file a second amended complaint by July 27, 2009, and granted defendants leave to make a motion to dismiss that pleading within 21 days after its filing.  See Minute Entry for July 6, 2009 Pre-Filing Conference (Doc. No. 25).  Intermed filed its Second Amended Complaint on July 27, 2009.  See 2d Amd. Cmplt. (Doc. No. 26).

otherwise deficient. See Motion to Dismiss the Second Amended Complaint ("Mot. to Dismiss") (Doc. No. 27). For the reasons that follow, the Motion to Dismiss is granted in part and denied in part.

## II. FACTUAL BACKGROUND

Intermed is a corporation organized under the laws of Connecticut. 2d Amd. Cmplt. at ¶ 3. Intermed's business consists of publishing, selling, marketing, and distributing healthcare education programs using latent image printing technology. Id. at ¶ 4. Defendant Alphamedica is a New York corporation that also engages in the publishing, selling, marketing, and distribution of healthcare education programs.[2] Id. at ¶ 5, 6. Rxperience, a division or wholly owned subsidiary of Alphamedica, is incorporated as a limited liability company under New York law. Id. at ¶ 7, 8. Rxperience is a healthcare services company that conducts, *inter alia*, the publishing, selling, marketing, and distribution of healthcare education programs through its website and office in New York. Id. at ¶ 10. Alphamedica has referred to Rxperience as a division of its company and holds it out as such to the public. Id. at ¶ 9.

Although Intermed and defendants are competitors in the healthcare education program industry, Intermed and Alphamedica entered into a confidentiality agreement on or about September 23, 1998, by which Intermed would share proprietary information with Alphamedica in an effort to create a mutually beneficial business

---

[2] The court has personal jurisdiction over the defendants because they have, *inter alia*, purposefully directed activity toward residents of Connecticut, transacted and conducted business in the state, and purposefully availed themselves of the benefits of doing business in the state. See 2d Amd. Cmplt at ¶ 11-13. The defendants do not challenge that the court has personal jurisdiction. See Mot. to Dismiss.

arrangement.  Id. at ¶ 14, 15.  By the terms of the agreement, Intermed would disclose proprietary information about its interactive learning products and latent image printing technology.  Id. at ¶ 16.  The disclosure of the proprietary information was for the sole purpose of determining if a joint venture between Intermed and Alphamedica was viable.  Id. at ¶ 17.  Subsequent to entering into this agreement, Intermed shared proprietary information such as publications, developing pens, supplier information, its printer, costs, pricing, and strategies.  Id. at ¶ 18.

On or about October 8, 1998, Intermed and Alphamedica entered into an agreement that provided for Intermed to serve as the exclusive publisher of Alphamedica's latent image healthcare education programs for a period of ten years. Id. at ¶ 19.  Rxperience had knowledge of this contract and the confidentiality agreement.  Id. at 20.  The agreement contained a price list that governed the prices Alphamedica would pay Intermed.  Id. at ¶ 21.  On May 21, 1999, Intermed sent Alphamedica a new price list that reduced the per unit prices under the Contract at the request of Alphamedica.  Id. at ¶ 22.  Intermed stated that it hoped the price reduction would facilitate moving forward with previously discussed projects.  Id. at ¶ 23.  Upon Intermed inquiring as to the status of projects in February and April of 2000, Alphamedica told Intermed that no projects were going forward;  Intermed relied on this statement.  Id. at ¶¶ 24, 25.

While Alphamedica did not publish any interactive healthcare education programs using latent image printing technology through Intermed, it created, published, and sold such programs through Rxperience.  Id. at ¶¶ 26, 27.  In 2003, for example, defendants published a series of these programs and utilized a developing

pen under the trademark "interactive insights." Id. at ¶ 30. Furthermore, Alphamedica intentionally failed to inform Intermed of its activities with Rxperience. Id. at ¶ 28. Intermed also alleges that defendants used the same printer that Intermed disclosed under the Confidentiality Agreement. Id. at ¶¶ 29, 32. From conversations with this printer and upon information and belief, plaintiffs allege that, from October 8, 1998 to October 8, 2008, defendants published and sold additional programs that were subject to the exclusive Publication Agreement, and used the same printer to do so as was disclosed in the Confidentiality Agreement. Id. at ¶ 33. In fact, during conversations Intermed executives had with Alphamedica in January and March of 2009, Alphamedica admitted to such publishing. Id. at ¶ 34. Intermed asserts that it could not have discovered these violations of the Publication Agreement and Confidentiality Agreement until late 2008. Id. at ¶ 35. At that time, Intermed attempted to order what appeared to be a program that would have been covered by the Contract from Rxperience's website, but Rxperience never replied to the order, the product was never delivered, and the product was removed from the website and no longer available for distribution. Id. at ¶¶ 36-38.

Intermed asserts that, at all relevant times, Alphamedica controlled Rxperience's operations and directed it in the commission of fraudulent and wrongful acts with malice that injured Intermed. Id. at ¶ 40. Intermed also alleges that Alphamedica and Rxperience had a fiduciary relationship, that Rxperience was an agent of Alphamedica, and that there was unity of interest and ownership between the two entities. Id. at ¶¶ 41-44.

Intermed brought this action against defendants on May 11, 2009. Intermed

claims that the defendants' actions caused the loss of profits, the loss of significant market share, the loss of positive exposure in the industry, and the loss of future business opportunities. Id. at ¶ 45. Intermed seeks damages in the form of actual, compensatory, special, and consequential damages, as well as punitive and exemplary damages. It also seeks attorney's fees, an award to cover the costs of this suit, and any other relief as the court may deem just and necessary. Id. at 16.

### III.     STANDARD OF REVIEW

In deciding this Motion to Dismiss, the court takes the allegations of Intermed's Second Amended Complaint as true and construes them in a manner favorable to Intermed. Hoover v. Ronwin, 466 U.S. 558, 587 (1984); Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds, Davis v. Scherer, 468 U.S. 183 (1984). The court must draw all reasonable inferences in Intermed's favor. See, e.g., Yung v. Lee, 432 F.3d 142, 146 (2d Cir. 2005); Lunney v. United States, 319 F.3d 550, 554 (2d Cir. 2003) (internal citations omitted).

The court's analysis is guided by Fed. R. Civ. P. 8(a)(2) ("Rule 8(a)(2)"), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has recently held that Rule 8(a)(2) "requires factual allegations sufficient 'to raise a right to relief above the speculative level.' " Boykin v. KeyCorp, 521 F.3d 202, 213 (2d Cir. 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). This "plausibility standard" in Twombly "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009)

(quoting Twombly).

**IV.    DISCUSSION**

Defendants argue that the Second Amended Complaint should be dismissed in its entirety.  Specifically, with respect to Counts Three, Four, Five, Six, Seven, Eight, and Ten, defendants argue that the claims are barred by the applicable statute of limitations.  See Mot. to Dismiss at 6-10.  Defendants further argue that, even if those Counts are not barred by the statute of limitations, they fail to state claims upon which relief can be granted, and should therefore be dismissed.  Id. at 10-15.  With respect to Counts One and Two, defendants assert that those claims for piercing the corporate veil should be dismissed because there is no independent cause of action for "piercing the corporate veil."  See id. at 16-17.  Finally, defendants assert that Count Nine's claim for civil conspiracy should be dismissed because Intermed has not identified a viable underlying tort to support that claim.  See id. at 17-19.

   A.    Statute of Limitations

Defendants argue that the Third, Fourth, Fifth, Sixth, Seventh Eighth and Tenth Counts of Plaintiff's Second Amended Complaint should be dismissed as barred by the applicable statute of limitations.  See Mot. to Dismiss at 6 (citing CONN. GEN. STAT. § 52-576's six year statute of limitations for breach of contract claims).  At this stage in the proceedings however, it would be premature to dismiss Plaintiffs' claims on this ground.

In reviewing a Motion to Dismiss, a court must construe a plaintiff's complaint liberally and draw all reasonable inferences in favor of the plaintiff.  Yung, 432 F.3d at 146.  "What that means in the statute of limitations context is that dismissal is

appropriate only if a complaint clearly shows the claim is out of time." Harris v. City of New York, 186 F.3d 243, 250 (2d Cir. 1999) (reversing in part district court's dismissal of claim because claim was not clearly barred by applicable statute of limitations). To require anything more from plaintiffs in their pleadings would be unfair, "for the statute of limitations is an affirmative defense under Rule 8(c). . . that [plaintiff's] pleading need not have anticipated." Id. (citing Overall v. Estate of Klotz, 52 F.3d 398, 403 (2d Cir. 1995)).

In this case, the Second Amended Complaint does not "clearly show. . . that the claim is out of time." Id. Defendants argue that Intermed's Second Amended Complaint manifestly alleges that the breach of the Confidentiality and Publications Agreements "occurred sometime in 1998. . . ." Mot. to Dismiss at 7. The court disagrees. While Intermed pinpoints the breach of contract (and thus the time at which the statute of limitations began to run) as occurring sometime between October 8, 1998 and October 8, 2008, Intermed does not state that the breach occurred in 1998. See, e.g., 2d Amd. Cmplt at ¶ 59 ("Alphamedica initially breached the Agreement when, *after* October 8, 1998, it and its agent and division Rxperience, first published healthcare education programs using latent image printing technology without using InterMed as the publisher.") (emphasis added). The defendants also argue that Intermed's Tenth Count for Civil Conspiracy "alleges that RxPerience initially breached that duty sometime in 1998 after the execution of the Confidentiality and Publications Agreements." Mot. to Dismiss at 9. This assertion is also misleading, considering that in Count Ten Intermed again alleges that "Rxperience initially breached their duty, *after* October 8, 1998, when it first published healthcare education programs using latent

-7-

image printing technology without using intermed as the publisher." 2d Amd. Cmplt. at ¶ 126 (emphasis added). The Second Amended Complaint does not clearly show that Intermed's claims are "out of time," and the claims should therefore not be dismissed based on being barred by the statute of limitations.[3]

> B.   Failure to State a Claim Upon Which Relief Can Be Granted

Even if the Third, Fourth, Fifth, Sixth, Seventh, Eighth, and Tenth Counts of the Second Amended Complaint are not time barred, defendants assert that they should nonetheless be dismissed for failure to state a claim upon which relief can be granted. See Mot. to Dismiss at 10-15. Plaintiffs, however, assert they have supported their allegations with more than a mere recitation of legal standards.

> 1.   Counts Three and Four for Breach of Contract

Intermed brings an action for breach of contract against both Alphamedica and Rxperience for violating the October 8, 1998 Publication Agreement. In order to state a breach of contract claim, a plaintiff must allege (1) the existence of a valid agreement, (2) that the plaintiff fulfilled their contractual obligations, (3) that defendants failed to fulfill their contractual obligations, and (4) that plaintiffs suffered damages as a result of that breach. Timmons v. City of Hartford, 283 F. Supp. 2d 712, 718 (D. Conn. 2003). Although defendants allege that plaintiffs have failed to adequately support each of these requirements with factual allegations, plaintiffs have in fact provided adequate factual support.

---

[3] Intermed also offers a "continuing course of conduct" argument in support of its assertion that its claims are not time barred. See Opposition at 6-12. Because the court concludes that the Second Amended Complaint does not clearly show that the "claim is out of time," there is no need to address the "continuing course of conduct" argument.

First, Intermed asserts in its Second Amended Complaint that Intermed and Alphamedica entered into a valid contract whereby Intermed would serve as the exclusive publisher of Alphamedica's latent image healthcare education programs for a period of ten years.  2d Amd. Cmplt. at ¶ 19.  Intermed also provides, as Exhibit Two to its Second Amended Complaint, a September 24, 1998 letter from Intermed to Alphamedica which details the terms of that agreement.  September 24, 1998 Letter, Exh. 2 to 2d Amd. Cmplt.  Second, Intermed alleges that it "fully performed its obligations under the Agreement."  2d Amd. Cmplt. at ¶ 57.  Third, Intermed asserts that, as a result of defendants' breach of the contract, Intermed has lost profits, significant market share, positive exposure in the industry, and future business opportunities.  Id. at ¶¶ 45, 68, 69.  Defendants do not challenge any of these allegations.  See Mot. to Dismiss at 13.

The only issue, then, is whether Intermed has offered "factual allegations sufficient 'to raise a right to relief above the speculative level'" with respect to whether or not the defendants breached the Publication Agreement.  Boykin, 521 F.3d at 213 (citations omitted).  The court finds that Intermed has offered such factual allegations.  In the Second Amended Complaint, Intermed asserts that Alphamedica used Rxperience to create, publish, and sell programs that, under the Publication Agreement, were to be exclusively published by Intermed.  2d Amd. Cmplt. at ¶ 26, 27.  Intermed supports this claim with numerous factual allegations, such as that in 2003 defendants published a series of programs using latent image printing technology and utilized a developing pen under the trademark "interactive insights."  Id. at ¶ 30.  Intermed also asserts that, from conversations with their printer and upon information and belief, from

October 8, 1998 to October 8, 2008, defendants published and sold additional programs that were subject to the Publication Agreement and therefore ought to have been published exclusively by Intermed.  Id. at ¶ 33.  Intermed also alleges that, during conversations Intermed executives had with Alphamedica in January and March of 2009, Alphamedica admitted to publishing these materials.  Id. at ¶ 34. Considering these factual allegations, the court finds that Intermed has sufficiently pled Counts Three and Four for breach of contract, and the Motion to Dismiss is denied with respect to those Counts.

                2.      Counts Five and Six for Breach of the Confidentiality Agreement

Counts Five and Six of the Second Amended Complaint are also claims for breach of contract, but here Intermed alleges that defendants violated the Confidentiality Agreement of September 23, 1998.  As discussed in Part IV.B.1., supra, Intermed must allege (1) the existence of a valid agreement, (2) that the plaintiff fulfilled their contractual obligations, (3) that defendants failed to fulfill their contractual obligations, and (4) that plaintiffs suffered damages as a result of that breach. Timmons, 283 F. Supp. 2d at 718.

Intermed has met these pleading requirements.  In the Second Amended Complaint, Intermed alleges that, on or about September 23, 1998, it entered into a Confidentiality Agreement by which Intermed would share proprietary information with Alphamedica for the purposes of evaluating a potential business arrangement.  2d Amd. Cmplt. at ¶ 15.  Intermed has attached the agreement as Exhibit One to the Second Amended Complaint, and has alleged that it fully performed its obligations under the Agreement.  Id. at ¶¶ 15, 83.  Most importantly, despite defendants claims to

the contrary, Intermed also offers factual allegations that defendants did not abide by the terms of the Agreement.  For example, Intermed claims that, in 2003, Alphamedica and Rxperience published programs using the "same printer disclosed by Intermed pursuant to the confidentiality agreement."  Id. at ¶ 30, 32.  Intermed also alleges that, based upon information and belief and conversations with its printer, defendants published programs (without Intermed's involvement) using information disclosed by Intermed pursuant to the Confidentiality Agreement.  See id. at ¶ 33.  Finally, Intermed has alleged that it has suffered damages as a result of the breach.  See id. at ¶ 89, 98.  Because the court finds these factual allegations are sufficient, the court denies the Motion to Dismiss with respect to Counts Five and Six.

     3. Count Seven for Breach of Duty of Good Faith and Fair Dealing

To allege a claim for a breach of duty of good faith and fair dealing, "the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith.  Bad faith means more than mere negligence; it involves a dishonest purpose." Collins v. Anthem Health Plans, Inc., 275 Conn. 309, 333-34 (2005) (citation omitted). Demonstrating bad faith at this stage requires alleging "a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive."  Habetz v. Condon, 224 Conn. 231, 237 (1992) (citations omitted).

The factual allegations made by Intermed adequately support its claim for breach of the duty of good faith and fair dealing.  Intermed asserts that "Alphamedica intentionally and deceptively failed to inform Intermed that it had created, published,

-11-

and/or sold interactive healthcare education programs using latent image printing technology through its agents and division, Rxperience." 2d Amd. Cmplt. at ¶ 28. Furthermore, upon Intermed inquiring as to upcoming projects, Alphamedica told Intermed that no projects involving latent image printing were going forward. Id. at ¶ 24. These allegations support the conclusion that any breach by defendants was "not prompted by an honest mistake as to one's rights or duties," but instead by a "design to mislead or deceive" Intermed. Habetz, 224 Conn. at 237. Therefore, at this stage, the court denies the Motion to Dismiss Intermed's claim for breach of the duty of good faith and fair dealing.

        4.        Count Eight for Unjust Enrichment

Defendants argue that the unjust enrichment claim should be dismissed because, under Connecticut law, "lack of a remedy under the contract is a precondition for recovery based upon unjust enrichment." Gagne v. Vaccaro, 255 Conn. 390, 401 (2001). In essence, defendants argue that, because Intermed cannot recover under both the contract *and* a theory of unjust enrichment, the unjust enrichment claim should be dismissed.

Although defendants accurately note that Intermed cannot recover under both the contract and an unjust enrichment theory, courts have consistently held that plaintiffs may plead alternative claims. See, e.g., Henry v. Daytop Village, Inc., 42 F.3d 89, 95 (2d Cir. 1994). Connecticut courts have also specifically held that a plaintiff may simultaneously plead a claim for recovery under a contract and a claim for recovery under a theory of unjust enrichment. See, e.g., Lieberman v. Emigrant Mortgage Co., 436 F. Supp. 2d 357, 366-67 (D. Conn. 2006) (Hall, J.) (denying motion to dismiss even

though plaintiff alleged both contract violation and claim for unjust enrichment); United Steal, Inc. v. Haynes Const. Co., CV 05003498, 2006 WL 164812 at *3 ("Although in the present case [plaintiff] will not be able to recover under both the contract and unjust enrichment, it may advance these theories in the alternative until it has gathered sufficient facts to determine which theory more properly applies.").

Furthermore, even though defendants have represented that they have "no argument" that either the Confidentiality Agreement or Publications Agreement lack consideration or mutuality -- and therefore effectively concede both the existence of the contracts and the fact that any recovery would be realized under those contracts, thus precluding a recovery under an unjust enrichment theory -- the court sees no reason to dismiss the unjust enrichment claim at this point.  See Mot. to Dismiss at 15. Defendants are correct that plaintiffs may not recover under this theory if the two agreements govern the parties' relationships; nonetheless, that issue is best left for determination at a later stage.  Accordingly, the Motion to Dismiss with respect to the unjust enrichment claim is denied.

### 5. Count Ten for Tortious Interference

The essential elements of a claim for tortious interference are the "existence of a contractual or beneficial relationship and that the defendant(s), 'knowing of that relationship, intentionally sought to interfere with it; and, as a result, the plaintiff claimed to have suffered actual loss.'" Soloman v. Aberman, 196 Conn. 359, 364 (1985) (citation omitted).  A plaintiff must prove that the defendant's conduct was in fact tortious, which may be satisfied "by proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation. . . or that the defendant acted

maliciously." Id. at 365 (citations omitted). Indeed, the "burden is on the plaintiff 'to plead and prove at least some improper motive or improper means.'" Id.

In this case, defendants argue that Intermed's claim for tortious interference cannot be maintained because Intermed offers "no facts supporting the alleged malicious intent." Mot. to Dismiss at 16. Intermed has asserted, however, that Rxperience knew of the relationship between Intermed and Alphamedica but nonetheless intentionally and with malice interfered with that relationship. 2d Amd. Cmplt. at ¶¶ 124, 125. Intermed also provides information as to the specific occasions on which Rxperience interfered with the contract. See, e.g., Id. at ¶¶ 27, 28, 30, 32. Considering these allegations, the court concludes that Intermed has met its burden of pleading "at least some improper motive or improper means" to support its tortious interference claim, and that the claim should not be dismissed. See Soloman, 196 Conn. at 365.

Defendants also argue that, because the Second Amended Complaint alleges that at all relevant times "Alphamedica controlled and directed the actions of Rxperience such that Rxperience had at no time, no separate mind, will or existence of its own," a tortious interference claim is unavailable. See Mot. to Dismiss at 16 (citing 2d Amd. Cmplt. at ¶ 39). If Alphamedica was in fact controlling Rxperience, defendants argue, then this cause of action essentially alleges that Alphamedica tortiously interfered with its own contract. Although the court acknowledges that this argument has merit, the precise nature of the relationship between Alphamedica and Rxperience is not clear on the face of the Second Amended Complaint. See, e.g., 2d Amd. Cmplt. at ¶ 8 ("Rxperience is a division of Alphamedica or a wholly owned subsidiary of

Alphamedica."). Further, a claimant can plead in the alternative. See FED. R. CIV. P. 8(d)(2). Given the federal rules of pleading, and the uncertainty as to Rxperience's relationship with Alphamedica, the court determines that the tortious interference claim should not be dismissed at this stage.

    C.    <u>Piercing the Corporate Veil Claims</u>

In its Second Amended Complaint, Intermed asserts a cause of action to pierce the corporate veil of Alphamedica both because Alphamedica dominated, directed, and controlled Rxperience, and because Alphamedica and Rxperience shared a unity of interest considerable enough to extinguish any independence that Rxperience might attempt to claim it possessed. See 2d Amd. Cmplt. at ¶¶ 46-54. Defendants accurately note that an allegation of "piercing the corporate veil" is not in and of itself a viable cause of action under Connecticut law. McCarthy v. State Five Indus. Park, HHDCV054015888S, 2009 Conn. Super. Lexis 195, at *102 (Conn. Super. Ct. Jan. 5, 2009) ("Piercing the corporate veil is not a cause of action; it is an equitable remedy.").[4] In its Opposition, Intermed effectively concedes that Counts One and Two do not state grounds for relief, and only requests that dismissal of the claims "does not prevent the Court from considering them in reviewing the pending motion." Opposition at 16. The court agrees that, if Intermed established the factual bases, it may "pierce the corporate veil" and hold Rxperience accountable at a future stage of this litigation. At this point, however, because Counts One and Two do not state a cause of action under

---

[4] Practically speaking, piercing the corporate veil is a mechanism by which plaintiffs can pursue liability against defendants that are in fact responsible for conduct despite the use of a "mere shell. . . as an intermediary to perpetuate fraud or promote injustice." Angelo Tomasso, Inc. v Armor Const. & Paving, 187 Conn. 544, 557 (1982) (discussing appropriateness of piercing of corporate veil).

Connecticut law, the Motion to Dismiss as to the "piercing" claims is granted.  However, while the claims contained in Counts One and Two for piercing the corporate veil are dismissed, the allegations contained in those Counts (paragraphs 46-54) remain in the Second Amended Complaint so that Intermed may pursue recovery on other causes of action under a theory of piercing the corporate veil.  See Cmplt. at ¶¶ 46-54.

### D. Civil Conspiracy Claim

In Count Nine of the Second Amended Complaint, Intermed asserts a claim for civil conspiracy and alleges that Alphamedica and Rxperience, "with knowledge of the duties owed to Intermed. . . conspired to breach the Confidentiality Agreement and Agreement, interfere with Intermed's contractual relationships, and duties owed to Intermed."  2d Amd. Cmplt. at ¶ 117.   "The [elements] of a civil action for conspiracy are: (1) a combination between two or more persons, (2) to do a criminal or an unlawful act or a lawful act by criminal or unlawful means, (3) an act done by one or more of the conspirators pursuant to the scheme and in furtherance of the object, (4) which act results in damage to the plaintiff."  Macomber v. Travelers Property and Cas. Corp., 277 Conn. 617, 635 (2006).  Additionally, there is "no independent claim of civil conspiracy.  Rather, [t]he action is for damages caused by acts committed pursuant to a formed conspiracy rather than by the conspiracy itself. . . . Thus, to state a cause of action, a claim of civil conspiracy must be joined with an allegation of a substantive tort."  Id.

Defendants argue that the civil conspiracy claim should be dismissed because Intermed's claim is not joined with an allegation of a substantive tort.  The court disagrees.  First, given that the defendants' argument assumes that Intermed's other causes of action should be dismissed, the argument is subverted in as much as those

other causes of action are not dismissed. Furthermore, as Intermed notes in its Opposition, its claim for breach of the duty of good faith and fair dealing can be considered an action in tort under Connecticut law. See Central Sports, Inc. v. Yamaha Motor Corp., USA, 477 F. Supp. 2d 503, 511 (D. Conn. 2007) ("Under Connecticut law, every contract contains an implied covenant of good faith and fair dealing, violation of which is actionable in tort."). To be sure, Connecticut courts have not conclusively held that an action for the breach of the duty of good faith and fair dealing arises in tort. See Cornerstone Realty, Inc. v. Dresser Rand Co., 993 F. Supp. 107, 110 n.2 (D. Conn. 1998) (comparing Connecticut cases and finding that "Connecticut courts have not been uniform as to whether a cause of action for the breach of good faith is properly characterized as an action in tort or an action on a contract"). Nonetheless, given that precedent at least lends some support to Intermed's position, the court finds that Intermed does "raise a right to relief above the speculative level." Boykin, 521 F.3d at 213. Because the "essence of a civil conspiracy. . . [is] two or more persons acting together to achieve a shared goal that results in injury to another," and because the Second Amended Complaint offers allegations of precisely that conduct, the defendants' Motion to Dismiss with respect to the civil conspiracy claim is denied. Macomber, 277 Conn. at 635.

## V. CONCLUSION

For the reasons stated above, defendants' Motion to Dismiss (Doc. No. 27) is granted with respect to Counts One and Two of the Second Amended Complaint, and denied with respect to the remaining Counts. Because Counts One and Two are dismissed on account of the fact that piercing the corporate veil is not an independent

cause of action no matter how well a plaintiff might plead such a claim, those Counts are dismissed with prejudice.  However, even though "piercing the corporate veil" cannot be maintained as an independent cause of action, Intermed can still recover against Rxperience on a theory of piercing the corporate veil, and the allegations contained in Counts One and Two are to remain in the Second Amended Complaint.

**SO ORDERED.**

Dated at Bridgeport, Connecticut, this 18th day of December 2009.


      /s/ Janet C. Hall
Janet C. Hall
United States District Judge